UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE  DIVISION

| | | |
|---|---|---|
| **FRANKIE DUPLANTIS** | * | **CIVIL ACTION NO. 10-1575** |
| **VERSUS** | * | **MAGISTRATE JUDGE HILL** |
| **NORTHROP GRUMMAN** | * | **BY CONSENT OF THE PARTIES** |

RULING ON MOTION TO DISMISS

Pending before the Court is the Motion to Dismiss for Lack of Subject Matter Jurisdiction filed by defendant, Huntington Ingalls Incorporated f/n/a Northrop Grumman Shipbuilding, Inc. ("Huntington"), on March 16, 2012. [rec. doc. 47]. Plaintiff, Frankie Duplantis ("Duplantis"), filed opposition on June 11, 2012. [rec. doc. 62]. Intervenor, American Interstate Insurance Company, adopted Duplantis's opposition. [rec. doc. 63]. On June 13, 2012, Huntington filed a reply. [rec. doc. 64].

The Court held oral argument on June 15, 2012, after which I took the motion under advisement. For the following reasons, the Motion is **GRANTED**.

Background

LHD-8 was a vessel built for the United States Navy at Huntington's Pascagoula, Mississippi shipyard. On December 9, 2008, LHD-8 underwent an unsuccessful builder's sea trial when the main propulsion system failed, which

resulted in a fire in the aft main engine room.  Huntington put out a bid for completion of certain re-chroming work on the LHD-8 C.S. Controls, Inc. ("C.S.") id the work which Huntington later accepted.

In January, 2009, C.S. subcontracted the work to E&E Machine Shop ("E&E").  E&E assigned Duplantis to the re-chroming job under the supervision of a C.S. employee.  On January 16, 2009, Duplantis fell through an open hatchway while cleaning up his workspace, sustaining injuries.

A second sea trial was conducted on February 4, 2009, which trial was successful.  On March 20, 2009, an acceptance sea trial was conducted for the U.S. Navy as well as the Board of Inspection and Survey.  This acceptance sea trial was successful.

On April 16, 2009, LHD-8 was delivered to the U.S. Navy.  The craft was commissioned on October 24, 2009.

On October 15, 2010, Duplantis filed a Complaint in this Court on the basis of admiralty jurisdiction, 28 U.S.C. § 1333, and the general maritime law.  On March 27, 2012, Duplantis filed a Third Amended Complaint for Damages to alternatively plead diversity jurisdiction under 28 U.S.C. § 1332.  [rec. doc. 56].

On March 16, 2012, Huntington filed the instant Motion to Dismiss for Lack of Subject Matter Jurisdiction on the grounds that no basis exists for admiralty/maritime jurisdiction. [rec. doc. 47].

### Standard for Lack of Subject Matter Jurisdiction

The party asserting subject matter jurisdiction bears the burden of proof of demonstrating jurisdiction. *Lopez v. U.S. Immigration and Customs Enforcement*, 455 Fed.Appx. 427, 432 (*citing Davis v. United States*, 597 F.3d 646, 649 (5th Cir. 2009)). A complaint should be dismissed for lack of subject-matter jurisdiction when "it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction." *Sawyer v. Wright*, 2012 WL 718493, *1 (5th Cir. March 7, 2012) (*quoting Davis, supra*). In determining whether it has jurisdiction, the court may consider: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Davis* at 649–50.

### Analysis

Huntington asserts that because Duplantis cannot establish a maritime tort, this Court lacks subject matter jurisdiction. The Fifth Circuit applies a two-part inquiry to determine the existence of maritime jurisdiction. *Molett v. Penrod Drilling Co.*, 872 F.2d 1221, 1224 (5th Cir. 1989) (*citing Executive Jet Aviation v.*

3

*City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). "That inquiry is essentially fact-bound, turning on a determination of the location of the tort, the situs factor, and the pertinent activity, the nexus factor." *Id*. (*quoting Richendollar v. Diamond M. Drilling Co.*, 819 F.2d 124, 127 (5th Cir.1987) *(en banc)*). Because Duplantis' accident occurred on navigable waters, only the nexus prong must be satisfied here.

To satisfy the nexus factor, the "wrong [must] bear a significant relationship to traditional maritime activity." *Executive Jet*, 409 U.S. at 268, 93 S.Ct. at 504. It has long been held that neither ship construction nor supplying materials for that purpose is a maritime activity, even though the endeavor is undertaken when the hull lies in navigable waters. *Lowe v. Ingalls Shipbuilding, A Division of Litton Systems, Inc.*, 723 F.2d 1173, 1185 (5th Cir. 1984) (*citing Thames Towboat Company v. The Schooner Francis McDonald*, 254 U.S. 242, 41 S.Ct. 65, 65 L.Ed. 245 (1920)). On the other hand, ship repair has been viewed as maritime activity. *Id*. (*citing North Pacific Steamship Company v. Hall Brothers Marine Railway & Shipbuilding Company*, 249 U.S. 119, 39 S.Ct. 221, 63 L.Ed. 510 (1919)).

Here, Huntington argues that because LHD-8 was still under construction at the time of plaintiff's accident, it was not a vessel for maritime jurisdictional purposes. In opposition, Duplantis asserts that he was hired to repair the ship;

4

thus, it constituted maritime activity.

Here, the evidence indicates that LHD-8 was not a vessel at the time of the incident. James J. Davis, III, a construction manager for Huntington, submitted an affidavit stating that the ship was not complete on January 16, 2009. His duties included oversight of the construction of LHD-8 during the time period at issue. He stated that LHD-8 underwent an unsuccessful builder's sea trial on December 9, 2008, which was a less than a month prior to the date of the accident. Subsequent to the accident, the craft underwent a second builder's trial on February 4, 2009, which was successful. LHD-8 was not delivered to the U.S. Navy until April 16, 2009, and was not commissioned until October 24, 2009.

Under these circumstances, the LHD-8 was not a vessel "in navigation" at the time of Duplantis's accident. The term "in navigation" means "engaged in an instrument of commerce and transportation on navigable waters." *Williams v. Avondale Shipyards, Inc.*, 452 F.2d 955, 958 (5th Cir. 1971). A ship undergoing sea trials is not in navigation. *Reynolds v. Ingalls Shipbuilding Div., Litton Systems, Inc.*, 788 F.2d 264, 267 (*citing Williams* at 958). A hull afloat on navigable waters does not create a vessel for jurisdictional purposes if the vessel itself is under construction and is not yet navigable, even if the vessel is nearly complete. *Thomas v. Global Explorer, LLC*, 2003 WL 943638, *1 (E.D. La.

March 5, 2003) (*citing Rosetti v. Avondale Shipyards, Inc.*, 821 F.2d 1083 (5th Cir.1987)); *see also Richendollar v. Diamond M. Drilling Co., Inc.*, 819 F.2d 124 (5th Cir.1987) (holding that a jackup drilling rig, incapable of navigation because of holes in its hull, and approximately 85 percent complete at the time of plaintiff's accident, was not a vessel for jurisdictional purposes).

Accordingly, the Court finds that the LHD-8 was under construction, incomplete, and not fit for its intended purpose at the time of the accident causing Duplantis's injuries. *See Miles ex rel. Miles v. VT Halter Marine, Inc.*, 792 F.Supp2d 919, 924 (E.D. La. 20100. LHD-8 therefore was not a vessel for purposes of admiralty jurisdiction, and plaintiff's claims that arise under admiralty and general maritime law must be dismissed.

## Conclusion

Based on the foregoing reasons, the Motion to Dismiss filed by Huntington is **GRANTED**.

Signed June 20, 2012, at Lafayette, Louisiana.

_____
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE